**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

ISUZU NORTH AMERICA
CORPORATION, a California
corporation,

   Plaintiff,

v.

PROGRESSIVE METAL
MANUFACTURING COMPANY, a
Michigan corporation,

   Defendant.

Case No.

Hon.

**JURY TRIAL DEMANDED**

## VERIFIED COMPLAINT

Plaintiff Isuzu North America Corporation ("Isuzu"), by and through its counsel, Honigman LLP, and for its Verified Complaint against Defendant Progressive Metal Manufacturing Company ("PMMC"), states as follows:

### I. NATURE OF THE ACTION

1. This is an automotive supply chain dispute stemming from PMMC's unlawful repudiation and breach of its contracts to supply Isuzu's requirements for certain custom-made brackets, clips, and spacers (the "Component Parts") that are integral to the assembly of Isuzu's N-Series gas and F-Series diesel medium-duty commercial trucks in Charlotte, Michigan.

1

2. Despite agreeing less than a year ago to produce Isuzu's requirements of the Component Parts for the 2021 calendar year, PMMC stopped shipping the full quantities of Component Parts ordered by Isuzu and declared that it will not produce any more Component Parts, despite its contractual obligations, even while it continues to produce similar parts for other customers.

3. The assembly plants in Charlotte, Michigan cannot produce and ship trucks without the Component Parts, and unless PMMC ships more parts, the plants will be forced to shut down their assembly lines as early as the week of *October 10, 2021*.

4. A shut down of the Charlotte assembly lines would send irreparable harm rippling through Isuzu's supply chain, harming not only Isuzu, but also General Motors, every dealer who sells the Isuzu and Chevrolet trucks produced in Charlotte, every customer of these dealers waiting for delivery of these trucks, and every other Isuzu supplier whose products will not be ordered while production is halted.

5. To avoid this imminent, irreparable harm, Isuzu seeks the immediate issuance of a Temporary Restraining Order ("TRO") and a preliminary injunction compelling PMMC to fulfill its obligations under the parties' requirements contracts and to continue to supply the Component Parts at least in the minimum quantities

and through December 2021, the minimum amount of time needed for Isuzu to secure an alternative source of supply for each Component Part.

6. In addition to injunctive relief, Isuzu also seeks recovery of its damages incurred to date caused by PMMC's multiple breaches of the parties' supply contracts, including Isuzu's attorneys' fees and costs.

## II. PARTIES, JURISDICTION, AND VENUE

7. Isuzu is a California corporation with its principal place of business in Anaheim, California.

8. PMMC is a Michigan corporation with its principal place of business at 3100 E. 10 Mile Road, Warren, Michigan 48091.

9. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) because the parties are citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. Specifically, Isuzu is a citizen of California, PMMC is a citizen of Michigan, and this case centers on requirements contracts for more than $75,000, the breach of which will cause an incalculable amount of monetary and non-monetary harm.

10. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) and (2) because the contracts at issue provide that venue is proper in "any courts having jurisdiction over the Supplier," this Court has jurisdiction over PMMC, and a substantial part of the events giving rise to this litigation occurred in this judicial district.

3

41070799.4

## III. GENERAL ALLEGATIONS

### A. The Parties' Supply Relationship

11. Isuzu and PMMC are parties to annual purchase orders issued by Isuzu and accepted by PMMC (the "Requirements Contracts"), under which PMMC must manufacture certain custom-made brackets, clips, and spacers in such quantities and at such times as needed to meet Isuzu's requirements for the given year.

12. Under the Requirements Contracts, PMMC is Isuzu's sole supplier of more than 50 unique part numbers.

13. The Component Parts are necessary for the assembly of Isuzu's N-Series gas and F-Series diesel medium-duty commercial trucks.

14. None of the Component Parts are "off the shelf"—they are all custom designed and custom built for use in Isuzu's trucks.

15. PMMC, like other automotive suppliers, is a just-in-time supplier.

16. Isuzu does not maintain a significant inventory of the Component Parts and relies on weekly shipments from PMMC to meet its production needs.

17. Because Isuzu's trucks cannot be completed without PMMC's parts, full and timely shipment of the Component Parts is essential to maintain Isuzu's supply chain.

18. To facilitate a seamless supply relationship, Isuzu provides PMMC with periodic Estimate and Authorization Reports, which provide a rolling 14-week forecast of the number of Component Parts Isuzu needs and authorizes PMMC to purchase any necessary materials and begin fabrication.

19. Once PMMC produces the Component Parts, they are shipped to the manufacturing facility in Charlotte, Michigan. There, the Component Parts are assembled into Isuzu's N-Series gas trucks and F-Series diesel trucks.

20. Isuzu sells the completed trucks to (i) its subsidiary, Isuzu Commercial Truck of America, Inc., which distributes them as Isuzu brand trucks through its U.S. and Canadian dealers, and (ii) General Motors, which distributes them as Chevrolet brand trucks through U.S. and Canadian Chevrolet dealers.

21. Isuzu is already under contract to sell each and every N-Series gas and F-Series diesel truck it has slated for production in 2021.

**B.  PMMC Renewed and then Unlawfully Repudiated the Parties' Requirements Contracts**

22. On November 10, 2020, PMMC accepted Isuzu's annual Requirements Contracts and agreed produce all of the Component Parts Isuzu needed for the 2021 calendar year.

23. PMMC fulfilled Isuzu's needs, as it historically had, without any issue for the first six months of 2021.

24. Without warning, however, on June 30, 2021, PMMC sent Isuzu a "Notice of Force Majeure" letter stating that it would no longer fulfill Isuzu's full supply needs and incorrectly asserting that its performance was excused under Isuzu's Terms and Conditions.

25. PMMC wrote that "despite diligent and persistent efforts, PMMC is unable to hire and retain the skilled and unskilled laborers required to produce all of the components under the Contracts . . . ."

26. The letter specifically references Section 14 of Isuzu's Terms and Conditions, which provides that:

> Any delay or failure of either party to perform its obligations under this Contract shall be excused to the extent that Supplier is unable to produce, sell or deliver, or Buyer is unable to accept delivery, buy or use, the Products covered by this Contract, directly as the result of an event or occurrence beyond the reasonable control of such party and without its fault or negligence (a "force majeure event"), including, if applicable, acts of God, actions by any governmental authority (whether valid or invalid), fires, floods, windstorms, explosions, riots, natural disasters, wars and sabotage; provided that written notice of such force majeure event (including the anticipated duration of the delay) must be given by the affected party to the other party as soon as possible after the event or occurrence (but in no event more than 10 days after the force majeure event occurs).

27. PMMC also purported to advise Isuzu that the problem was "so severe that PMMC presently estimates that, after August 15, 2021, PMMC will be able to produce only a limited quantity of certain products for Isuzu under the Contracts."

### C.      Isuzu Worked to Preserve the Supply Chain

28.     Following PMMC's June 30 letter, Isuzu attempted to resolve the supply issue and avoid a catastrophic shutdown of the Charlotte assembly lines by offering to make reasonable accommodations to PMMC.  But despite Isuzu's generous best efforts, PMMC has been unwilling to agree to *any* solution that would allow Isuzu to avoid a shutdown.

29.     Isuzu has offered to pay material price increases to PMMC.

30.     Isuzu has offered to help PMMC reduce any burdens associated with wage increases in the market.

31.     On July 15, PMMC informed Isuzu that it was two weeks behind schedule and suggested that a two-week pause would allow it to catch up to its supply obligations.  Isuzu agreed to the pause and suspended its orders for two weeks.  But on July 20, PMMC reiterated its intention to cease shipments and said the two week pause made no "meaningful impact" on PMMC's issues.

32.     On July 28, the parties met to devise a strategy for PMMC to exit the business without jeopardizing operations at the Charlotte plants and to set a part-by-part list of dates by which Isuzu would resource parts from new suppliers.

33.     On August 4, Isuzu sent PMMC proposed buildout dates, which ranged from October 20 to December 17, based on the reasonable amount of time required to find a new source for each Component Part.

34. PMMC rejected all of Isuzu's proposed buildout dates and asserted buildout dates of August 15 and September 15, and only for a fraction of the quantity of parts Isuzu required. PMMC also indicated that it was unwilling to retain production of *any* Isuzu parts going forward.

35. On September 2, PMMC asserted that it would not produce *any* Isuzu parts after September 15, 2021.

36. Since September 15, PMMC has shipped some parts (but not in the quantities that Isuzu ordered) and has completely failed to ship others.

37. In a last-ditch effort to reach an agreement to bridge the gap until Isuzu can fully resource the Component Parts, Isuzu generated another detailed, part by part resourcing schedule with revised dates and reduced quantities.

38. Once again, PMMC flatly rejected Isuzu's proposal.

39. On September 28, PMMC shut off access to the Electronic Data Interchange ("EDI") feed where Isuzu posts its purchase orders and demanded that Isuzu only submit spot orders, further demonstrating its resolution to terminate the supply relationship despite Isuzu's best efforts to maintain it.

40. As of October 4, 28 part numbers and 11,478 pieces were past due.

**D.  PMMC Revealed the Real Reason for Its Repudiation**

41. As part of its attempts to reach an amicable resolution, Isuzu conducted site visits to PMMC's Macomb County facility.

42. During the first visit on July 12, PMMC admitted that the improving economy had led many of its other customers to substantially increase the sizes of their orders. This surge in orders had made it difficult for PMMC to keep pace.

43. During the second site visit three days later, PMMC admitted that it was in fact able to keep producing parts and was doing so for other customers.

44. In another moment of candor, a PMMC representative stated that PMMC's lawyers had advised PMMC that Isuzu's contracts were less onerous than PMMC's contracts with its other customers.

45. Upon information and belief, this led PMMC to make a strategic decision to repudiate its contracts with Isuzu rather than proportionately reduce its production commitments to all of its customers. Since then, PMMC has also claimed that it does not have the tooling capacity to perform the work Isuzu needs it to, and that several of its employees have contracted COVID-19 and were unable to work.

**E.    Isuzu Has Worked Diligently to Find Alternative Suppliers**

46. Over the course of the parties' negotiations, Isuzu has worked aggressively to resource the Component Parts.

47. Establishing a supply relationship is an extraordinarily complex, carefully choreographed undertaking that involves multiple preproduction steps to validate the design, safety, and manufacturability of parts to ensure that a supplier can launch its manufacturing operations with the requisite quality and volumes.

48. To resource PMMC's production, Isuzu must identify new suppliers; verify that they possess the tooling, personnel, and capacity to take on new business; obtain and negotiate price quotes; share designs, specifications, and quality standards; inspect their facilities and processes; obtain, inspect and approve samples; sign binding contracts; place purchase orders and releases; and arrange logistics.

49. The new suppliers need to obtain raw materials; understand Isuzu's designs, specifications, and expectations; train personnel; and align their production processes and schedules.

50. Isuzu will be unable to have a new supplier ready to produce the last of the essential Component Parts until at least *December 22, 2021*, and then only if the supplier were to satisfy all of its qualification requirements.

51. Meanwhile, if PMMC continues to refuse to ship Component Parts, Isuzu would run out of certain integral Component Parts, and would need to shut down its assembly lines in Charlotte as soon as the week of *October 10, 2021* until its new suppliers were up and running.

F.   **The Imminent Irreparable Harm Caused by PMMC's Actions**

52. PMMC's repudiation and breach of the parties' Requirements Contracts will have devastating consequences and cause irreparable harm to Isuzu and others. If PMMC stops supplying or releasing the Component Parts, then Isuzu will suffer a shutdown of the assembly lines in Charlotte.

53. Any shutdown of the assembly lines would idle the workers on those lines and hurt not only Isuzu, but also General Motors, every dealer who sells the Isuzu or Chevrolet trucks produced on those lines, every customer of these dealers waiting for delivery of these trucks, and every other Isuzu supplier whose products will not be ordered while production is halted.

54. As of October 4, 2021, Isuzu has already started to run out of parts, and in the absence of a Court order compelling continued shipments, Isuzu anticipates the assembly lines will shut down as early as the week of October 10, 2021.

55. Isuzu has come to the Court seeking injunctive and other relief to ensure the uninterrupted supply of the Component Parts under the Requirements Contracts until resourcing can be completed and to avoid the catastrophic consequences that would result from a shutdown of the production of Isuzu's trucks.

## **COUNT I – BREACH OF CONTRACT**

56. Isuzu repeats and re-alleges herein each of the foregoing paragraphs.

57. The Requirements Contracts are valid and mutually binding contracts between Isuzu and PMMC under which PMMC agreed to produce Component Parts in such quantities and at such times as needed to meet Isuzu's requirements.

58. PMMC's duties under the Requirements Contracts are clearly ascertainable and explicit enough to warrant enforcement.

59. PMMC has repudiated the Requirements Contracts by unequivocally declaring its intent not to supply certain parts.

60. PMMC has unambiguously breached the Requirements Contracts by, among other things, ceasing the production and shipment of Component Parts pursuant to the terms of the Requirements Contracts.

61. If PMMC does not fully perform its obligations under the Requirements Contracts, Isuzu will not be able to timely obtain certain Component Parts from any other source and will have no adequate remedy at law for the harm caused by such breaches. Isuzu's supply chain will be disrupted. Isuzu will also suffer immeasurable and irreparable damage to its reputation and goodwill.

62. Isuzu has fully complied with all provisions of, and has performed all of its obligations under, the Requirements Contracts.

63. As a result of PMMC's breach of the Requirements Contracts, Isuzu has and will suffer damages and will be irreparably harmed if PMMC does not immediately resume supplying Component Parts to Isuzu.

64. Isuzu is entitled to specific performance of the Requirements Contracts pursuant to MCL 440.2716 and otherwise.

WHEREFORE, Plaintiff respectfully requests that the Court order as follows:

A. Temporary, preliminary, and permanent injunctive relief under applicable law, preventing PMMC from taking any action inconsistent with its obligations under the Requirements Contracts, and directing PMMC to continue to supply or release

      100% of Isuzu's requirements for the Component Parts in a timely manner and cease all threats of an actual cessation of shipments to Isuzu;

B.    Specific performance under applicable law preventing PMMC from taking any action inconsistent with its obligations under the Requirements Contracts, and directing PMMC to continue to supply or release 100% of Isuzu's requirements for the Component Parts in a timely manner and cease all threats of and actual cessation of shipments to Isuzu;

C.    Declaratory relief and ruling under applicable law that PMMC is obligated to supply Isuzu with 100% of its requirements for the Component Parts as set forth in the Requirements Contracts, that PMMC breached the Requirements Contracts by failing to timely supply Isuzu with 100% of its requirements of the Component Parts, and that PMMC is obligated to perform all of its obligations and commitments to Isuzu under the terms of the Requirements Contracts, including the obligation to supply Isuzu with 100% of its requirements for the Component Parts.

D.    An award of damages, legal fees, and other costs arising out of PMMC's bad faith failure to perform under the Requirements Contracts, including but not limited to (i) the costs Isuzu is incurring to resource parts; (ii) the higher prices Isuzu will be paying to the new suppliers to whom Isuzu resourced parts; (iii) the higher logistics costs Isuzu will be incurring in connection with the resourced parts; and (iv) the potential future costs that Isuzu may incur if it experiences a quality-related problem with the suppliers to whom it resourced parts as a result of the expedited resourcing process forced by PMMC; and

E.    All such other relief as this Court may deem just, equitable, and appropriate.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Isuzu demands a trial by jury on all issues present in this civil action.

                Respectfully submitted,

                HONIGMAN LLP

                By: /s/ Jeffrey K. Lamb
                    Jeffrey K. Lamb (P76738)
                    Joseph R. Sgroi (P68666)
                    Rian C. Dawson (P81189)
                    Keith D. Underkoffler (P84854)
                2290 First National Building
                660 Woodward Avenue
                Detroit, MI 48226-3506
                313.465.7000
                jlamb@honigman.com
                jsgroi@honigman.com
                rdawson@honigman.com
                kunderkoffler@honigman.com

                *Attorneys for Isuzu North America Corporation*

Dated: October 6, 2021

## VERIFICATION

I, Christopher Rase, the Vice President, Purchasing at Isuzu North America Corporation ("Isuzu"), declare that I have reviewed the allegations set forth in the Verified Complaint and have authorized the filing of this Verified Complaint. I further declare under penalty of perjury that all of the allegations made in the foregoing Verified Complaint of which I have personal knowledge are true and correct, and that all allegations of which I do not have personal knowledge I believe to be true and correct based on information received from my employees.

Dated: October 6, 2021

_____
Christopher Rase